# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:15-CV-00382-MOC-DSC

| | |
|---|---|
| LEIGH ANN HARRIS, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>THE VANGUARD GROUP, INC., )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss Plaintiff's Complaint," Doc. 3, and the parties' associated briefs and exhibits, Docs. 4, 9, 10 and 11.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the *pro se* Complaint, Doc. 1, Ex. 1, as true, Plaintiff Leigh Ann Harris ("Plaintiff") was a certified financial planner employed by Defendant The Vanguard Group, Inc. ("Defendant") in Charlotte, North Carolina. Beginning in January 2014, Plaintiff promoted the creation of an employer resource group ("ERG") called Vanguard Interfaith Network Experience ("VINE") as an interfaith group for employees to meet and discuss their faith. She received permission from Beth Orford, a Senior Manager and Principal, to gauge interest in the

ERG.  On two occasions, Plaintiff met with representatives of various faiths in the Charlotte office. Plaintiff contacted employees in another office and was subsequently asked by Ms. Orford to limit her efforts to the Charlotte office and follow the process advocated by Vanguard's Office of Diversity and Inclusion for the creation of ERGs.  On April 23, 2014, Brian Fishbone with the Office of Diversity and Inclusion informed Plaintiff that "all new [ERGs] would be on hold for 2014." Id. at 8.

Plaintiff alleges that she was promoted to work with clients having ten million dollar plus portfolios in late February or early March 2014.  In April 2014, Plaintiff alleges that her manager communicated to her that she "had not set Plaintiff up in job to be successful, Plaintiff's manager set her up for a client failure in May 2014."  At Plaintiff's mid-year review on July 11, 2014 her manager advised that she was "tracking further development needed." Id. at 10.

Plaintiff alleges that she received positive comments from co-workers in July 2014.  In August 2014, Plaintiff was away from work under the Family Medical Leave Act ("FMLA").  She believes that this FMLA leave was held against her.  Her year-end performance review noted "you responded to the feedback at midyear and upon your return in September began executing on your plan." Id. at 10-11.  Plaintiff's year-end review was scheduled for December 8, 2014.  Plaintiff's manager advised her in advance that she was rated "Further Development Needed."  Plaintiff alleges that this rating precluded her from receiving a merit increase or a year-end bonus of between $15,000 to $24,000.  In response to this review, Plaintiff drafted a five page rebuttal outlining her disagreements with her manager's statements.

On January 13, 2015, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in violation of Title VII of the Civil Rights Act of

1964 based upon her Christian religion and for retaliation. Plaintiff received her right to sue letter from the EEOC on May 5, 2015.[1]

Plaintiff resigned her employment on February 6, 2015 as a result of her treatment by Defendant and her belief that Defendant would "continue to be hostile to religious faith if Plaintiff continued to work in [that] environment." Id. at 13.

Plaintiff's Complaint alleges one cause of action for "Violation of Title VII under the Civil Rights Act of 1964 as amended Religious Retaliation." Id. at 12. Plaintiff alleges that Vanguard discriminated against her for promoting a faith based group, for her Christian faith, and for voicing her opposition to Vanguard's alleged boycott of the restaurant chain Chick-fil-A. She alleges that Vanguard retaliated against her by giving her a "Further Development Needed" review and causing her to be ineligible to receive a year-end bonus and merit increase in salary.

Defendant filed this Motion to Dismiss arguing that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it falls short of the minimum pleading standards required for claims of religious discrimination or retaliation under Title VII. The Motion to Dismiss has been briefed and is now ripe for review.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked

---

[1] Plaintiff did not attach her EEOC charge or right to sue letter to her Complaint.

by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The Court is mindful of the latitude extended to the pleadings of *pro se* litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (courts should "[c]onstru[e] [a *pro se*] petitioner's inartful pleading liberally"). However, courts cannot act as the *pro se* plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of her complaint. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). As a result, even a *pro se* plaintiff's claim for relief "requires more than labels and conclusions...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In light of this authority, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will not survive a motion to dismiss under Rule 12(b)(6).

### III. DISCUSSION OF CLAIMS

Plaintiff only alleges a claim for "Religious Retaliation" in her Complaint. Being mindful of her *pro se* status, the Court will consider whether Plaintiff has pled a claim for religious discrimination or retaliation under Title VII.

#### A. Religious Discrimination

In McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582 (4th Cir. 2015), the Fourth Circuit examined the sufficiency of factual allegations needed to withstand a motion to dismiss a Title VII discrimination case in light of Iqbal and Twombly. The Court held that while a plaintiff need not plead a prima facie case of discrimination, she must still state a claim that "is plausible on its face." McCleary–Evans, 780 F.3d at 585 (quoting Iqbal, 556 U.S. at 678). To state a plausible

claim of discrimination, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." Id.

To assert a claim of religious discrimination, Plaintiff must allege that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job in a satisfactory manner; and (4) similarly situated employees outside of the protected class received more favorable treatment. Huggins v. N.C. Dep't of Admin., No. 5:10-CV-414-FL, 2013 WL 5201033, at *8 (E.D.N.C. Sept. 13, 2013) aff'd per curiam, 554 F. App'x 219 (4th Cir. 2014), cert. denied, 135 S. Ct. 285 (2014).

The Fourth Circuit has stated that "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of a plaintiff's employment." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal citations and quotation marks omitted). The Court defined an adverse employment action as one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Consistent with the requirement that an adverse action materially alter the terms and conditions of employment, courts in the Fourth Circuit have held that neither the receipt of a negative performance evaluation nor the denial of a discretionary bonus constitute adverse employment actions under Title VII. See, e.g., Scott v. Teachers Ins. & Annuity Ass'n of Am., No. 3:12-CV-00697-FDW, 2013 WL 2948315, at *6 (W.D.N.C. June 14, 2013) aff'd sub nom., Scott v. TIAA-CREF, 542 Fed. Appx. 294 (4th Cir. 2013) (dismissing Title VII retaliation claim and finding poor performance review was not adverse action despite impact on bonus award);

Freeman v. North State Bank, No. 5:03-CV-916-BO, 2007 WL 5745936, at *2 (E.D.N.C. Feb. 20, 2007); aff'd, 282 Fed. Appx. 211 (4th Cir. 2008) (granting summary judgment on Title VII discrimination claim and finding receipt of discretionary bonus less than that awarded to comparator employees was not adverse action); Nasis- Parsons v. Wayne, No. 4:05CV36, 2006 WL 1555913, at *5-7 (E.D. Va. June 1, 2006) aff'd sub nom. Parsons v. Wynne, 221 Fed. Appx. 197 (4th Cir. 2007) (granting summary judgment on Title VII retaliation claim and finding negative performance evaluation which resulted in plaintiff not receiving bonus was not adverse action); Pulley v. KPMG Consulting, Inc., 348 F.Supp.2d 388, 394 (D. Md. 2004) (finding that "neither the poor evaluation rating," nor the placement on performance improvement program constitute adverse employment actions); Schamann v. O'Keefe, 314 F.Supp.2d 515, 531 (D. Md. 2004) (granting summary judgment on Title VII discrimination and retaliation claims and finding lowered performance evaluation, which prevented discretionary bonus for plaintiff, was not adverse action).

Plaintiff does not allege that she was guaranteed an annual bonus or salary increase from Vanguard as part of her agreed upon compensation. Plaintiff's allegations make clear that any bonus was not for a specific amount, but only in the potential range of $10,000 - $24,000. Furthermore, Plaintiff's use of the phrase "merit increase" indicates that any increase in her salary was not automatic and had to be earned. Consequently, the Court finds that neither Vanguard's negative assessment of Plaintiff's performance nor its failure to award a discretionary bonus or merit increase rise to the level of adverse employment actions that support a claim of discrimination.

The Court also finds that Vanguard's decision to delay the formation of new ERG's does not constitute a material alteration of the terms, conditions or benefits of Plaintiff's employment and is therefore not an adverse employment action.

Plaintiff's Complaint is also devoid of any facts showing that similarly situated non-Christian employees of Vanguard received more favorable treatment. Elhassan v. Proctor & Gamble Mfg. Co., No. 1:12cv1039, 2014 WL 1281231, at *4 (M.D.N.C. March 27, 2014). Plaintiff must do more than simply state that she was treated differently from her non-Christian co-workers. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. She does not identify a single non-Christian co-worker, by name, job title, or even generically who she contends was treated more favorably.

Plaintiff's Complaint fails to meet the standards established by Fourth Circuit precedent for a religious discrimination claim. Consequently, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to her claim for religious discrimination.

**B. Retaliation Claim**

The United States Supreme Court recently addressed the standard for establishing causation in a Title VII retaliation claim in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013). The Supreme Court held that "[t]he text, structure and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as opposed to the more lenient causation standard applied in Title VII discrimination claims. Id. at 2534. Consequently a plaintiff must plead sufficient facts to plausibly state that her protected activity was the but-for cause of the adverse employment action. Plaintiff asserts that Vanguard retaliated against her for "being the voice of the faith community, [and] for communicating with

CEO and upper management on a stand Plaintiff did not see Defendant historically having taken and therefore out of character for Defendant." Doc. 1, Ex. 1 ¶ 26.

Construing Plaintiff's allegations liberally, she states that she engaged in the following protected activity: (1) communicating with Vanguard about her desire to create an interfaith ERG; (2) sending emails to Vanguard's CEO and members of senior management after learning of the alleged boycott of Chick-fil-A; and (3) filing a charge with the EEOC. Doc 1 at ¶¶ 15-17, 20, 26. By definition, Plaintiff's attempts to form an interfaith ERG and her emails about a restaurant boycott do not support a claim for retaliation. These activities were not related to making a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C.A. § 2000e-3(a).

Plaintiff's EEOC charge is covered under Title VII. However, it has not been causally connected to any adverse action Plaintiff claims to have suffered. She filed the EEOC Charge on January 13, 2015, more than a month after she received the negative year-end performance rating, and almost nine months after she was informed that the creation of new ERGs was on hold for 2014. Doc. 1 at ¶¶ 15-17. Plaintiff cannot establish any causal connection between those actions and an EEOC charge that was filed months later. Consequently, Plaintiff's retaliation claim necessarily fails and should be dismissed.

For these reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u> and Plaintiff's Complaint be dismissed with prejudice in its entirety.

In her Response, Plaintiff "seeks the opportunity to amend complaint to reflect retaliation if Plaintiff unable to satisfactorily meet the four prima facie for religious retaliation." Doc. 9 at 8. The undersigned respectfully recommends that her request be <u>denied</u>. Plaintiff has not filed an appropriate motion seeking leave to amend her Complaint as required by Rule 15 of the Federal

Rules of Civil Procedure and this Court's Local Rules. As stated in Local Civil Rule 7.1(C)(2), "[m]otions shall not be included in responsive briefs. Each motion should be set forth as a separately filed pleading." More importantly, the Court finds that any amendment to Plaintiff's Complaint would be futile. She has not identified any additional facts that would make her claim "plausible on its face."

## IV. ORDER

IT IS ORDERED that all further proceedings in this action, including all discovery, are STAYED pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## V. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Complaint, Doc. 3, be GRANTED and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v.

Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the *pro se* Plaintiff, counsel for Defendant; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: November 6, 2015

David S. Cayer
United States Magistrate Judge